**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan (SBN 348491)
*valter@malkpogolaw.com*
Erik Pogosyan (SBN 345650)
*erik@malkpogolaw.com*
5320 Laurel Canyon Blvd
Valley Village, CA 91607
Tel: (818) 484-5204

*Counsel for Plaintiff and the proposed class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

TAJMIGUEL VALADEZ, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

WK KELLOGG CO, a Delaware corporation,

Defendant.

Case No. 5:26-cv-9060

**CLASS ACTION COMPLAINT**

1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq*.
2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq*.
3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq*.
4. BREACH OF EXPRESS WARRANTY
5. RESTITUTION BASED ON QUASI-CONTRACT/UNJUST ENRICHMENT

**DEMAND FOR JURY TRIAL**



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Plaintiff Tajmiguel Valadez ("**Plaintiff**"), individually and on behalf of all others similarly situated, brings this class action complaint against Defendant WK Kellogg Co ("**Defendant**") and alleges as follows:

**SUMMARY OF THE ACTION**

1. This is a class action lawsuit brought on behalf of all purchasers of Defendant's Kellogg Special K branded "ZERO ADDED SUGAR" cereals products (the "**Products**"), sold online and at retail locations throughout California and the United States.[1]

2. Defendant falsely and deceptively advertises the Products as "ZERO ADDED SUGAR," "0g ADDED SUGAR" (collectively, the "**Challenged Representations**"). However, contrary to the Challenged Representations, as explained in detail below, the Products actually contain allulose, which qualifies as a sugar since it is a monosaccharide. Indeed, allulose is not merely present in the Products in trace amounts. Defendant's own labeling admits the Products contain four grams of allulose per serving for each Strawberry Crème Product and 3 grams per labeled serving for the Cinnamon Product.

3. Around a month ago, on July 27, 2026, the United States Court of Appeals for the Seventh Circuit confirmed this exact conclusion in *Franco v. Chobani, LLC*, No. 25-2087, 2026 U.S. App. LEXIS 22276, 2026 WL 2150193 (7th Cir. July 27, 2026), holding that "[a]llulose is a sugar under the relevant federal regulation" because 21 C.F.R. § 101.9(c)(6)(ii) defines total sugars as the sum of all free mono- and disaccharides, and allulose is undisputedly a monosaccharide. The Seventh Circuit further held that state consumer protection claims premised on "sugar free" labeling of allulose-sweetened products are not preempted, and that consumers plausibly allege deception where a product makes an absolute "sugar free" promise while containing four grams of allulose per serving. The same is true here.

4. Defendant seeks to take advantage of consumers' desire for truly premium products that are free from added sugar by falsely, misleadingly, and deceptively labeling the Products with the Challenged Representations. Defendant does so at the expense of unwitting consumers, as well

[1] The "Zero Added Sugar" Kellogg Special K Cereal Products include, but are not limited to, the following flavors: Strawberry Crème and Cinnamon.

as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage.

5. Plaintiff brings this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra*). Plaintiff seeks, on his individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products with the Challenged Representations to avoid or mitigate the risk of deceiving the public into believing that the Products conform to the Challenged Representations, by requiring Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representations from the Products' labels, removal or modification of the Challenged Representations from the Products' advertising, modification of the Products' formulation be it a change in ingredients or its sourcing and manufacturing processes, and/or discontinuance of the Products' manufacture, marketing, and/or sale.

6. A true and correct copy of the Products' packaging label is pictured below.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**Special K Plus Strawberry Crème Cereal**







**Special K Plus Cinnamon Cereal**






Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

7. Consumers are deceived by Defendant's labeling and advertising of the Products as "ZERO ADDED SUGAR," "0g ADDED SUGAR" into believing that they are purchasing products without any added sugar. Consumers rely on Defendant's labeling and advertising of the Products as "ZERO ADDED SUGAR," "0g ADDED SUGAR" to be truthful and would not know that the Products are actually sweetened with allulose sugar.

8. Reasonable consumers such as Plaintiff do not have the specialized knowledge necessary to identify ingredients in the Products, such as allulose, as being inconsistent with Defendant's advertised "ZERO ADDED SUGAR," "0g ADDED SUGAR" representations.

9. Defendant knows that consumers are willing to pay more for products without any added sugar, and advertises the Products with the intention that consumers rely on the representations made on the front of the Products' packaging.

10. By falsely labeling the Products as "ZERO ADDED SUGAR," "0g ADDED SUGAR," Defendant has profited from consumers' preference for products that are made without sugar.

## PARTIES

11. **Plaintiff Tajmiguel Valadez:** Plaintiff is, and at all times relevant hereto was, a citizen of California. Plaintiff purchased the Kellogg's Special K Plus High Protein "Zero Added Sugar" Strawberry Crème Cereal from a Walmart location in San Jose, CA in or around July of 2026. In making his purchase, Plaintiff relied upon Defendant's labeling and advertising claims, namely, the Challenged Representations clearly printed on the front label of the Products. These claims were prepared and approved by Defendant and its agents and disseminated statewide and nationwide to encourage consumers to purchase the Products. If Plaintiff had known that the Products contained sugar ingredients, then Plaintiff would not have purchased the Product, or he would have purchased it at a substantially lower price.

12. **Plaintiff's Future Harm:** Plaintiff would like to purchase the Products again only if he can be sure that Defendant is compliant with the state consumer protection laws. Plaintiff continues to see Defendant's Products in stores and online available for purchase, and desires to purchase them again if the Challenged Representations were in fact true. Since Plaintiff would like

to purchase the Products again to obtain a cereal product that, as advertised, is truly free of added sugar, Plaintiff would purchase them again in the future, despite the fact that they were once marred by false advertising or labeling, as Plaintiff would reasonably, but incorrectly, assume the Products were improved (no longer contain added sugar). In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of food and beverage products, such as the Products. Neither Plaintiff, nor reasonable consumers, have the requisite knowledge to accurately determine whether ingredients such as allulose are or are not added sugars. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant fixed the formulation of the Products such that Plaintiff may buy them again, believing them to no longer be falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the Challenged Representations. Based on information and belief, the labeling of the Products purchased by Plaintiff is typical of the labeling of the Products purchased by members of the Class.

13. **Defendant WK Kellogg Co**. is a global snacking and North American cereal business with billions in yearly sales. Defendant WK Kellogg Co. is a Delaware corporation headquartered in Battle Creek, Michigan. At all times during the Class Period, Defendant was the manufacturer, distributor, marketer, and seller of the Products. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California who resides in this District. Plaintiff purchased the Products in this District.



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Defendant has deliberately marketed, advertised, and sold the Products within this District, and Defendant receives substantial compensation from sales in this District.

16. Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California. Defendants are authorized to do and are doing business in California.

## FACTUAL ALLEGATIONS

**A. Defendant Deceptively Markets and Labels the Products as "Zero Added Sugar," "0g Added Sugar" Throughout California and the United States**

17. Defendant manufacture, market, and sell the "ZERO ADDED SUGAR," "0g ADDED SUGAR" Special K Plus line of cereal products. The Products are sold in packs at major retailers throughout California and the United States, including Costco, Target, Walmart, CVS, and grocery stores, as well as online through Defendant's own website (specialkus.com) and third-party marketplaces such as Amazon.com.

18. Defendant prominently labels the front of every Product's packaging, and every individual pack, with the nutrient content claim "ZERO ADDED SUGAR," and/or "0g ADDED SUGAR." The back panel of the packaging repeats and reinforces the claim, touting the Products as "ZERO ADDED SUGAR," and/or "0g ADDED SUGAR".

19. Defendant's advertising repeats these claims across every marketing channel. On Defendant's own website, Defendant advertises the Products as containing "zero added sugar" while simultaneously admitting that the Products are formulated with allulose syrup. True and correct screenshots from Defendant's official website are reproduced below:[2]

[2] Kellogg's Special K Plus High Protein Zero Added Sugar Cereal, https://smartlabel.wkkellogg.com/Product/Index?gtin=00041192104046#ingredients (last visited August 2026).




20. Defendant likewise disseminates the Challenged Representations through third-party retail websites. On Amazon.com, Defendant advertises the Products as "ZERO ADDED SUGAR," and/or "0g ADDED SUGAR". and, in a section titled "High Protein," admits that the Products' net

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

carbs system consists of "4g Allulose." True and correct screenshots from Defendant's official Amazon brand content are reproduced below:[3]




21. Thus, Defendant's own marketing claims and product labeling admits that each serving of the Products contains "4g allulose per serving."

22. There is no such thing as "sugar-free" allulose; it does not exist. To peddle this contradiction in terms, Defendant deceives the public through misleading packaging statements and labels. This deception has earned Defendant many millions of dollars, while doing substantial damage to a broad class of consumers across California and the country.

///

///

[3] Amazon.com, Kellogg's Special K Plus Strawberry Creme High Protein Zero Added Sugar Cereal 6.6 oz product listing, https://www.amazon.com/Kelloggs-Special-Strawberry-Protein-Cereal/dp/B0FJTQ1PFT/ref=ast_sto_dp_puis?th=1 (last visited August 2026).

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**B. Allulose Is a Sugar**

23. Allulose is a sugar.

24. It is a naturally occurring sugar found in small quantities in foods such as figs, raisins, wheat, maple syrup, and molasses.[4]

25. Chemically, allulose is a monosaccharide epimer of fructose.[5]

26. Allulose and fructose are both sugar carbohydrates that differ only in the position of a single carbon atom.[6]

27. As a monosaccharide, allulose falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)").

28. Consistent with that regulatory definition, in its 2016 Nutrition Facts rulemaking the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance. No such rulemaking has ever occurred.[7]

29. The FDA is not the only entity that recognizes that allulose is a sugar. Tate & Lyle, the ingredient manufacturer responsible for the production of most commercial-grade allulose, has acknowledged in multiple FDA filings that "Allulose is a monosaccharide and is classified as a

[4]Cleveland Clinic Health Essentials, What Is Allulose?, available at https://health.clevelandclinic.org/what-is-allulose ("Allulose is a naturally occurring" sugar); see also https://www.medicalnewstoday.com/articles/326198 ("Allulose is a type of sugar that resembles fructose, which is the sugar that occurs naturally in fruit.").

[5]A Clinical Study on the Effect of Allulose, a Low-Calorie Sugar, on in vivo Dental Plaque pH, The Forsyth Inst., at p. 6 (2018) ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar").

[6]Han-Joo Maeng et al., Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol, 8 Foods 448 (Oct. 1, 2019), https://www.researchgate.net/figure/Chemical-structures-of-a-D-allulose-b-D-fructose-c-D-glucose-and-d-erythritol_fig4_336222515.

[7]Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

sugar."[8] Tate & Lyle has likewise acknowledged that "[a]llulose is a monosaccharide, or simple sugar."[9]

30. Even the sweetener industry's own website, allulose.org, plainly states that "Allulose (also called psicose) is a low-calorie sugar."[10]

31. "Zero Added Sugar," "0g Added Sugar" Special K Plus sweetened predominantly with allulose is really just a cereal sweetened with sugar; its very name is a lie.

32. There are also important differences between consuming allulose and consuming no sugar. While some preliminary research suggests allulose may metabolize differently than some other sugars in some people, that research carries significant caveats: studies have concluded that "dose difference of allulose may result in a different effect," that "the effect may differ by race as well as gender," and that "there might be a difference between a liquid form and a solid form" of allulose, and experts have concluded that more research needs to be done.[11]

33. Consumption of allulose can also cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[12] A large clinical trial on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[13]

---

[8] Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201.

[9] Tate & Lyle Study, Aug. 13, 2018, at p. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.").

[10] Calorie Control Council, Frequently Asked Questions, https://allulose.org/allulose-info/low-calorie-sugar/ ("Allulose (also called psicose) is a low-calorie sugar.").

[11] Tani Yuma et al., Allulose for the attenuation of postprandial blood glucose levels in healthy humans: A systematic review and meta-analysis, 18 PLoS One 4 (2023), https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0281150.

[12] Memorandum from Center for Science in the Public Interest to Food and Drug Administration (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf.

[13] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial. Nutrients, 2018 Dec 19;10(12):2010, doi: 10.3390/nu10122010.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**C. Federal Law Prohibits Defendant's "Zero Added Sugar," and "0g Added Sugar" Labels, and Plaintiff's Claims Are Not Preempted**

34. Plaintiff sues for violations of California law because he and the Class were tricked into buying Products deceptively labeled "Zero Added Sugar," and "0g Added Sugar that are actually made by adding sugar as one of the predominant ingredients. Plaintiff does not sue for any violation of FDA regulations. However, the deceptive labeling also violates federal laws and regulations regarding food labeling, such that Plaintiff's state law claims are not preempted.

35. Congress empowered the FDA to oversee and regulate food labeling by enacting the Food, Drug and Cosmetic Act, as amended by the Nutrition Labeling and Education Act. 21 U.S.C. § 301, et seq. These statutes allow the FDA to enact and enforce formal regulations, which the FDA has codified at 21 C.F.R. § 100.1 et seq.

36. The FDA's regulations draw a sharp distinction between two types of food label statements: (i) nutrition panel declarations, and (ii) nutrient content claims. The FDA has established the well-known "nutrition panel" and tightly controls exactly what declarations may, and may not, appear within the four walls of that panel. See, e.g., 21 C.F.R. § 101.9. None of Plaintiff's claims relate to or depend on any declaration made within the Products' nutrition panels. At issue in this case are the separate, deceptive nutrient content claims that Defendant has placed prominently on the Products' packaging and advertising outside of the nutrition panel.

37. Nutrient content claims are statements that "expressly or implicitly characterize[] the level of a nutrient," such as sugar. 21 C.F.R. § 101.13(b). The "Zero Added Sugar," "0g Added Sugar" statements that appear repeatedly and prominently on the Products' packaging and in Defendant's advertising are all nutrient content claims.

38. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

39. Section 101.9(c)(6)(iii) defines Added Sugars to include free mono- and disaccharides and sugars from syrups added during processing, and permits the amount of Added Sugars to be expressed as zero only when a serving contains less than 0.5 grams. Defendant's own labels disclose that the Products contain four grams of allulose from added allulose syrup per serving—amount that 8 times exceeds the less-than-0.5-gram condition for expressing Added Sugars as zero. As such, the Challenged Representations are impermissible nutrient-content claims.

40. The Challenged Representations also violate § 101.13(b)(4), which permits reasonable variations and synonyms of defined nutrient-content terms only if they are not misleading. "Zero Added Sugar," and "0g Added Sugar" is a reasonable variation or synonym of the terms "no added sugar," "without added sugar," and "no sugar added" governed by § 101.60(c)(2). That regulation permits those terms only if each of the following conditions is met:

41. Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" and "zero sugar" nutrient content claims at issue in this case. That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements, 21 C.F.R. § 101.60(c)(2)(i)–(v):

> (i) No amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging;
>
> (ii) The product does not contain an ingredient containing added sugars, such as jam, jelly, or concentrated fruit juice;
>
> (iii) The sugars content has not been increased above the amount present in the ingredients by some means, except where the intended functional effect of the process is not to increase the sugars content and the increase is functionally insignificant;
>
> (iv) The food that the product resembles and for which it substitutes normally contains added sugars; and
>
> (v) Unless the product qualifies as low or reduced calorie, the product bears a statement that it is not "low calorie" or "calorie reduced" and directs consumers to the nutrition panel for sugar and calorie information.

42. These requirements are conjunctive; each must be satisfied.

43. The Products do not comply with these regulations. Subsection (i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. As such, because Defendant adds 4 or 3 grams of allulose to the Products, the Challenged Representations do not comply with § 101.60(c)(2)(i).

44. The Products' outside-panel "0g Added Sugar" statements implicitly characterize the level of added sugars as absent. 21 C.F.R. § 101.13(b)(2)(i). Because those statements characterize that level and are consistent in form with the added-sugar claims defined at § 101.60(c)(2), they are permitted only if the Products satisfy that definition. Id. § 101.13(i)(1). They do not. Alternatively, if the statements are treated as inconsistent with any definition in subpart D, § 101.13(i)(2) permits them only where the label bears a disclaimer, adjacent to the statement, that the food is not "low" in that nutrient. No such disclaimer appears on any Product. And if the statements are treated as mere statements of amount under § 101.13(i)(3), they are permitted only if not false or misleading in any respect. The Challenged Representations are both false and misleading. Under every branch of § 101.13(i), the Challenged Representations are impermissible.

45. Because the Products bear false, misleading, and impermissible outside-panel nutrient-content claims, they are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.13(b)(4), (c), (i)(1), (i)(2), (i)(3), and (o), 101.60(c)(2), and 101.9(c)(6)(ii)–(iii). Plaintiff does not seek to enforce the FDCA directly. He seeks relief under independently enforceable state consumer-protection and warranty laws, including California's Sherman Law provisions adopting requirements identical to federal food-labeling requirements, and independently alleges that the Zero Sugar Representations mislead reasonable consumers.

**D. The Seventh Circuit's Decision in *Franco v. Chobani* Confirms That Allulose Is a Sugar, That "Sugar-Free" Claims for Allulose-Sweetened Products Are Unlawful and Deceptive, and That These Claims Are Not Preempted**

46. On July 27, 2026, in *Franco v. Chobani, LLC*, the Seventh Circuit reversed the dismissal of state consumer protection claims materially identical to those pled here, which challenged Chobani's "Zero Sugar" yogurt sweetened with four grams of allulose per serving.[14]

[14] *Franco v. Chobani, LLC*, No. 25-2087, 2026 U.S. App. LEXIS 22276, 2026 WL 2150193 (7th Cir. July 27, 2026).

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

47. The Seventh Circuit held that allulose is a sugar under 21 C.F.R. § 101.9(c)(6)(ii). The court explained that the regulation "defines 'Total Sugars' as 'the sum of all free mono-and disaccharides (such as glucose, fructose, lactose, and sucrose),'" that "[t]here's no dispute that allulose is a monosaccharide," and that "[b]ecause the definition includes every monosaccharide and the following parenthetical is merely a list of examples, allulose is a sugar under § 101.9(c)(6)(ii)." *Franco*, 2026 WL 2150193, at *3.

48. Notably, the FDA itself, appearing as amicus curiae at the Seventh Circuit's invitation, "took the position that the text of § 101.9(c)(6)(ii) is unambiguous, and that total sugars as defined in that regulation include all monosaccharides, including allulose." *Id.* The court found the FDA's reading persuasive, thorough, and consistent with the agency's earlier statements, including the FDA's 2016 rulemaking statement that allulose, as a monosaccharide, "must be included" in the Total Sugars declaration. *Id.*; 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

49. The Seventh Circuit rejected the argument that the parenthetical "(such as glucose, fructose, lactose, and sucrose)" limits the definition of sugars to substances sharing the physiological characteristics of the listed examples. The court held that the FDA "defined a class by way of chemistry; it reinforced that definition through examples, all of which share the same chemical structure," and that contextual evidence about physiological impact "cannot override the plain language of § 101.9(c)(6)(ii)." *Franco*, 2026 WL 2150193, at *3-4.

50. The Seventh Circuit also held that the FDA's October 2020 Allulose Guidance, in which the agency announced its intent to exercise enforcement discretion for the exclusion of allulose from Total Sugars and Added Sugars declarations on the nutrition panel, is not entitled to deference and does not change the analysis, for two independent reasons: first, the regulation is unambiguous, so "there is no plausible reason for deference"; and second, "[t]he Allulose Guidance isn't an interpretation of § 101.9(c)(6)(ii)"; rather, "it's an announcement of a change in enforcement policy." *Id.* at *4 (citing *Kisor v. Wilkie*, 588 U.S. 558 (2019); *Heckler v. Chaney*, 470 U.S. 821 (1985)). The court further observed that even if the Guidance had interpreted the regulation to exclude allulose, deference would have been inappropriate because such an interpretation would conflict with the agency's prior position. *Id.*

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

51. The Seventh Circuit accordingly held that the plaintiffs' state law claims were not preempted: "The federal requirements at issue are plain—food products cannot be labeled sugar free unless they have less than half a gram of sugar, and sugars include every monosaccharide, including allulose. . . . The [plaintiffs] want to hold Chobani liable under state law for violating identical standards, and so their claims are not preempted." *Id.* at *5 (citing 21 U.S.C. § 343-1(a)(5); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 484 (7th Cir. 2020)).

52. The Seventh Circuit further held that the plaintiffs plausibly alleged consumer deception, reasoning that "given the absolute promise on Chobani's products (sugar free)," the allegation that consumers were fooled by the labels was not implausible, and that "how reasonable consumers perceive [the] labels and make decisions about [the] products are questions of fact that cannot be answered" on the pleadings. *Id.* at *5-6 (citing *Bell*, 982 F.3d at 480-81; *Dumont v. Reily Foods Co.*, 934 F.3d 35, 41 (1st Cir. 2019)).

53. The Seventh Circuit also rejected the argument that reliance on the Allulose Guidance or FDA label approvals could immunize the manufacturer from state law suits: "the fact that one sovereign (the United States) indicated that it would not enforce its labeling requirements with respect to allulose should not have led Chobani to believe that the states would take a similar approach," and the manufacturer, as "a sophisticated actor[,] . . . should have been aware that the FDA's decisions about its enforcement priorities would not immunize the company from suits based on state law." *Id.* at *5.

54. Each of those holdings applies with equal or greater force here. Like Chobani's yogurt, the Products make an absolute promise regarding no added sugar while containing four grams of allulose per serving.

**E. The FDA Has Not Made Any Changes to the Sugar Nutrient Content Claim Regulations, and Its Nonbinding 2020 Guidance Does Not Apply to Them**

55. It is possible that Defendant may attempt to support a preemption defense by mischaracterizing the FDA's nonbinding October 2020 Allulose Guidance. Any such argument would rely on a gross misunderstanding of that guidance, and has now been squarely rejected by the Seventh Circuit in *Franco*.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

56. The 2020 Allulose Guidance begins with a prominent disclaimer noting that it merely "represents the current thinking of the [FDA]," is "not binding on the FDA or the public," "does not establish any rights for any person," and "should be viewed only as recommendations."[15] Such nonbinding recommendations are insufficient to preempt state law.

57. Further, the Allulose Guidance is expressly limited to declarations made within the four walls of the nutrition panel (the Total Sugars and Added Sugars declarations). It does not amend any existing law or regulation, does not assert that allulose is not a "sugar," and says nothing about the separate regulations governing "sugar free" and "zero sugar" nutrient content claims, which remain in full force and effect as written. Indeed, the Guidance reaffirms the FDA's view that allulose "is a monosaccharide with a molecular formula of C6H12O6, and is an epimer of D-fructose," and discusses ongoing research regarding "sugars like allulose."

58. Shortly after issuing the Allulose Guidance, the FDA established a docket inviting public comment regarding the labeling of certain sugars on the Nutrition and Supplement Facts label. Like the Guidance itself, that Request for Information was limited to potential changes within the nutrition panel; the FDA confirmed that it was not presently considering any changes to the nutrient content claims regulations related to the amount of sugars in a product, and stated only that it intended to address any potential revisions at an unspecified "later date" when "time and resources permit."[16]

59. In the years since, the FDA has never taken any action to amend the regulations governing sugar nutrient content claims. To the contrary, in May 2022 the FDA refused a petition to amend the regulatory definition of sugar in connection with the sugar tagatose and reiterated that the existing definition at 21 C.F.R. § 101.9(c)(6)(ii) remains in effect.[17] Allulose falls within the scope of that definition and is thus a "sugar" under existing FDA regulations.

///

[15] U.S. Food & Drug Admin., The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry (Oct. 2020).

[16] Notice, 85 Fed. Reg. 202 (October 19, 2020), https://www.govinfo.gov/content/pkg/FR-2020-10-19/pdf/2020-22900.pdf.

[17] U.S. Food & Drug Admin., Final Response to Citizen Petition from FDA CFSAN to Bonumose LLC, Regulations.gov, May 19, 2022, https://www.regulations.gov/document/FDA-2018-P-0874-0053.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**F. Defendant's Conduct Also Violates California's Sherman Law**

60. California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875, et seq. (the "Sherman Law"), expressly adopts all federal food labeling regulations as the food labeling regulations of the State of California. Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food labeling regulations of this state.").

61. The Sherman Law separately provides that food is misbranded "if its labeling is false or misleading in any particular" (Cal. Health & Safety Code § 110660), and prohibits the manufacture, sale, delivery, holding, offer for sale, advertising, and receipt in commerce of any food that is misbranded (Cal. Health & Safety Code §§ 110398, 110660, 110760, 110765, 110770).

62. Because the Products bear "ZERO ADDED SUGAR," and/or "0g ADDED SUGAR" nutrient content claims despite containing four grams of sugar (allulose) per serving, in violation of 21 C.F.R. § 101.60(c)(1) as adopted by the Sherman Law, the Products are misbranded under California law, and Defendant's manufacture, advertising, distribution, and sale of the Products is unlawful. Because these California requirements are identical to the federal requirements, Plaintiff's claims are not preempted. 21 U.S.C. § 343-1(a).

**G. Defendant Misleads Plaintiff and Reasonable Consumers, Who Relied on the Material and False Advertising Claims to Their Detriment**

63. **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products. Specifically, the composition of the Products, containing no added sugar, is important to consumers and motivates them to buy the Products. Consumer demand for products with no added sugar is well documented: consumer surveys have determined that over 70% of Americans are trying to limit or avoid sugars in their diet.[18] Defendant's own marketing strategy, which pairs the "Zero Added Sugar," and "0g Added Sugar" messaging, is expressly designed to capitalize on this demand.

[18]International Food Information Council, 2022 Food and Health Survey, May 18, 2022, https://foodinsight.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

64. **Reliance.** The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products.

65. **Consumers Lack Knowledge of Falsity.** Consumers, including Plaintiff, do not know, and have no reason to know, at the time of purchase, that the Products' Challenged Representations are false, misleading, deceptive, and unlawful. That is because consumers, including Plaintiff, do not work for Defendant and therefore have no personal knowledge of the actual ingredients used to make the Products or how those ingredients are classified. Additionally, average consumers do not have the specialized knowledge of a chemist or product developer. Allulose is not a common household name among consumers: in a 2021 marketing survey, only 15% of respondents had even heard of allulose, let alone knew it was a sugar.[19] Thus, reasonable consumers, like Plaintiff, cannot discern from the Products' ingredient disclosures that the Products contain sugar. Furthermore, reasonable consumers do not ordinarily review information on the back or side panels of a consumer product's packaging, particularly dense, fine-print ingredient disclosures. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at the side or back labels of consumer goods, such as ingredient lists, before they buy them.[20]

66. The average consumer generally spends no more than approximately 13 seconds making an in-store purchasing decision.[21] That decision is heavily based upon the product's front labeling because consumers do not have time to review and read every portion of the label and inspect in detail the rear label, which depicts the ingredients in small print.

---

[19] Perceptions and Use of Dietary Sweeteners, International Food Information Council, FoodInsight.Org, May 2021, https://foodinsight.org/wp-content/uploads/2021/05/IFIC-Sweeteners-Survey.May-2021.pdf.

[20] Grunert, Klaus, et al., Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK, 55 Appetite 177, 179-181 (2010) (in-store observational study finding only 11.6% of respondents who placed a product in their cart were observed looking at the side or back panels of its packaging before doing so); Grunert, Klaus, et al., Use and understanding of nutrition information on food labels in six European countries, 18(3) Journal of Public Health 261, 263, 266 (2010) (finding 62.6% of respondents looked at front packaging and only 7.7% looked elsewhere on the packaging for products they bought); Benn, Yael, et al., What information do consumers consider and how do they look for it, when shopping for groceries online, 89 Appetite 265, 270 (2015) (online eye-tracking study finding respondents tend to look at product pictures rather than detailed product information, with only 3.30% fixating on ingredient information).

[21] Dickson, Peter R. & Sawyer, Alan G., The Price Knowledge and Search of Supermarket Shoppers, 54 Journal of Marketing 42-53 (1990) (finding supermarket shoppers spent an average of approximately 12-13 seconds selecting an item).



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

67. **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside its massive marketing campaign and brand strategy, to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

68. **Knowledge of Falsity.** Defendant marketed the Products with the Challenged Representations, but Defendant opted to formulate and manufacture them in a manner that does not conform to those representations. Specifically, Defendant advertised and labeled the Products as "ZERO ADDED SUGAR," and/or "0g ADDED SUGAR", but, instead of using only non-sugar ingredients, Defendant chose to make the Products with allulose, a well-documented sugar, as their predominant ingredient. Defendant knew that: (a) it was putting allulose in the Products; (b) allulose is a sugar; (c) its own labels misrepresented the presence and amount of sugar in the Products; (d) reasonable consumers would view and assume to be true the information on the labels when making purchasing decisions; (e) reasonable consumers would, and in fact did, rely on Defendant's deceptive representations and labels in making their purchasing decisions; (f) Defendant was not giving consumers the benefit of the bargain; and (g) Defendant was charging consumers a premium for "ZERO ADDED SUGAR," and/or "0g ADDED SUGAR" products because it knew there was added sugar in the Products.

69. **Knowledge of Reasonable Consumers' Perception.** Defendant knew, or should have known, that the Challenged Representations would lead reasonable consumers into believing that the Products were free of added sugar, i.e., that the Products do not contain added sugar. Not only has Defendant labeled the Products with the Challenged Representations and executed a long-standing brand strategy and advertising campaign to identify the Products with the Challenged Representations, but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. § 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether

the Challenged Representations, be it in isolation or in conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Products contain no added sugar. Thus, Defendant either knew the Challenged Representations were misleading before it marketed the Products to the Class, including Plaintiff, or Defendant would have known that they were deceptive had Defendant complied with its statutory obligations.

70. **Knowledge of Materiality.** Defendant knew or should have known that the Challenged Representations are material to consumers. ***First***, manufacturers and marketers, like Defendant, generally reserve the front primary display panel of labels on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Products' labels, including "ZERO ADDED SUGAR," and/or "0g ADDED SUGAR" printed in large type across the front of every pack, demonstrates Defendant's awareness of its importance to consumers and Defendant's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping consumers' expectations, because they believe those repeated messages will drive consumers to buy the products. Here, the constant, unwavering use of the Challenged Representations on the Products, on Defendant's website, on third-party retail websites, and throughout Defendant's marketing campaign evidences Defendant's awareness that the falsely advertised product attribute is important to consumers. It also evidences Defendant's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales.

71. **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels and advertisements. Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the Challenged Representations in deciding to buy the Products, Defendant deliberately chose to market the Products with the Challenged Representations, thereby

misleading consumers into buying or otherwise overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product attributes that Defendant falsely advertised and warranted. Defendant's continued use of the Challenged Representations after the Seventh Circuit's July 27, 2026 decision in *Franco v. Chobani* confirming that allulose is a sugar under federal law further evidences the knowing and willful character of Defendant's misconduct.

72. **Price Premium.** Defendant charges a substantial price premium for the Products based on the Challenged Representations. For example, Defendant sells a 6.6 oz of the Products on its Amazon.com for $7.49. Plaintiff and Class members paid more for the Products, and would only have been willing to pay less or unwilling to purchase them at all, absent the false Challenged Representations.

**H. The Products Are Substantially Similar**

73. As described *supra*, Plaintiff purchased Kellogg's Special K Plus High Protein "Zero Added Sugar" Strawberry Crème Cereal (the "Purchased Product"). The additional unpurchased Products are substantially similar to the Purchased Product:

a. **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

b. **Brand.** All Products are sold under the Kellogg's Special K Plus High Protein "Zero Added Sugar" brand name and trade dress.

c. **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

d. **Purpose.** All Products are intended for the primary purpose of consumption, and are prepared and consumed in the same manner.

e. **False Advertising Claims.** All Products contain the same Challenged Representations on their labeling and packaging. In addition, all Products prominently display the Challenged Representations on the front label in order to focus the consumer's attention on the Challenged Representations.

f. **Key Ingredients.** All Products are sweetened with allulose, a sugar, and all Products contain four grams of allulose per serving.

g. **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for all Products: consumers are tricked into buying or otherwise overpaying a premium for products represented to contain no sugar, but they receive products that, contrary to the Products' labels, are sweetened predominantly with allulose, a sugar.

**I. No Adequate Remedy at Law**

74. **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

75. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary among certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

76. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, including the Products' labels, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law, such as the federal labeling regulations and the Sherman Law provisions described above. Thus, Plaintiff and Class

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the Products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

77. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm, none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures, is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representations are not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front labels concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception, and to prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet been completed, rendering injunctive relief all the more necessary. For example, because the Court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

purchasing practices, prices of past/future Products' sales, and quantities of past/future Products' sales.

78. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

79. **California vs. Nationwide Class Claims.** Violations of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

## CLASS ALLEGATIONS

80. **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as members of the Classes defined as follows:

> All persons or entities that, within four years prior to the filing of this Complaint through the present, purchased the Products in the United States, displaying the Challenged Representations on the Products' labels, for purposes other than resale ("**Nationwide Class**"); and
>
> All persons or entities that, within four years prior to the filing of this Complaint through the present, purchased the Products in California, displaying the Challenged Representations on the Products' labels, for purposes other than resale ("**California Subclass**")
>
> ("Nationwide Class" and "California Subclass," collectively, "**Class**").

81. **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and persons within the third degree of consanguinity to such judicial officer.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

82. **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

83. **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of hundreds of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of tens of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

84. **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a. Whether Defendant engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products;

b. Whether allulose is a sugar, including under 21 C.F.R. § 101.9(c)(6)(ii) as adopted by California's Sherman Law;

c. Whether Defendant's conduct of advertising and selling the Products as with "Zero Added Sugar," and/or "0g Added Sugar" creating the reasonable assumption that the Products do not contain any sugar, when the Products are sweetened predominantly with allulose, a sugar, constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, et seq.;

d. Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, et seq.;

e. Whether Defendant represented that the Products have characteristics or qualities that they do not have in violation of Civil Code section 1750, et seq.;

f. Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, et seq.;

g. Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, et seq.;

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

h. Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, et seq.;

i. Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, et seq.;

j. Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, et seq.;

k. Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, et seq.;

l. Whether Plaintiff and the Class paid more money for the Products than they actually received;

m. How much more money Plaintiff and the Class paid for the Products than they actually received;

n. Whether Defendant's conduct constitutes breach of warranty;

o. Whether Plaintiff and the Class are entitled to injunctive relief; and

p. Whether Defendant was unjustly enriched by its unlawful conduct.

85. **Typicality:** Plaintiff's claims are typical of the claims of the Class members he seeks to represent because Plaintiff, like the Class members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

86. **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

87. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c. Given the size of individual Class members' claims, few, if any, Class members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class members can seek redress for the harm caused to them by Defendant.

88. **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

89. **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

90. **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**<u>COUNT ONE</u>**

**Violation of California Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, et seq.**

***(Individually and On Behalf of the California Subclass)***

91. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

92. **California Subclass.** This cause of action is brought pursuant to Business and Professions Code section 17200, et seq., on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

93. **The UCL.** California Business & Professions Code sections 17200, et seq. (the "**UCL**") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

94. **False Advertising Claims.** Defendant, in its labeling and advertising of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products, specifically, the Challenged Representations (i.e., that the Products contain no sugar), despite the fact that the Products are sweetened predominantly with allulose, a well-documented sugar, in the amount of four grams per serving. Such claims and omissions appear on the front labels of the Products, which are sold at retail stores, point-of-purchase displays, and online.

95. **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's labeling because the Products contain allulose, a well-documented sugar. Defendant knew and knows that the Products contain allulose, and that allulose is a sugar,

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

yet Defendant intentionally advertises and markets the Products to cause reasonable consumers to believe that the Products are free of added sugar.

96. **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continue to lead to, reasonable consumers, including Plaintiff, believing that the Products are free of added sugar.

97. **Injury In Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's Challenged Representations, namely, Plaintiff and the California Subclass lost the purchase price premium for the Products they bought from Defendant.

98. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code section 17200.

99. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

100. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice, and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

101. **Injunction.** Pursuant to Business and Professions Code sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products with the Challenged Representations. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

102. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price premium they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

103. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for product attributes that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**"Unfair" Prong**

104. **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

105. **Injury.** Defendant's actions of mislabeling the Products with the Challenged Representations do not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and/or advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

106. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

107. **No Utility.** Here, Defendant's conduct of labeling the Products as "Zero Added Sugar" when the Products are sweetened predominantly with allulose, a sugar, has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

108. **Legislatively Declared Policy.** Some courts require that "unfairness must be tethered to some legislative[ly] declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). Defendant's conduct is tethered to the legislatively declared policies embodied in 21 C.F.R. § 101.60(c)(1) and the Sherman Law, which prohibit "sugar free" claims on foods containing 0.5 grams or more of sugars per serving.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

109. **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code section 17200.

110. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

111. **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

112. **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products with the Challenged Representations.

113. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that are supposedly free of added sugar, but instead purchased Products that are sweetened predominantly with allulose, a well-documented sugar. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

**"Fraudulent" Prong**

114. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

115. **Fraudulent & Material Challenged Representations.** Defendant used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations are false, and Defendant knew or should have known of their falsity. The Challenged Representations are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer. As the Seventh Circuit held in *Franco* with respect to materially identical claims, an "absolute promise" that a product is sugar free, when it in fact contains four grams of allulose per serving, plausibly deceives reasonable consumers.

116. **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code section 17200.

117. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representations to their detriment in that they purchased the Products.

118. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations. Alternatively, it could have refrained from formulating the Products with allulose as an ingredient.

119. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

120. **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the Challenged Representations.

121. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that supposedly contained no added sugar, but instead purchased

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Products that are sweetened predominantly with allulose, a well-documented sugar. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

**"Unlawful" Prong**

122. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

123. **Violations of the CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, et seq. (the "**CLRA**") and California Business and Professions Code sections 17500, et seq. (the "**FAL**"), as set forth below in the sections regarding those causes of action.

124. **Violations of the Sherman Law and Federal Labeling Requirements.** Defendant's labeling of the Products with the Challenged Representations further violates the Sherman Law, Cal. Health & Safety Code §§ 110100(a), 110398, 110660, 110760, 110765, and 110770, which adopts and incorporates 21 C.F.R. § 101.60(c)(1) and 21 C.F.R. § 101.9(c)(6)(ii). As the Seventh Circuit confirmed in *Franco*, food products cannot be labeled sugar free unless they contain less than half a gram of sugars per serving, and sugars include every monosaccharide, including allulose. The Products, which contain four grams of allulose per serving, are misbranded, and each sale of the misbranded Products is an unlawful business act or practice.

125. **Additional Violations.** Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent, and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

126. **Unlawful Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

127. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations and/or refrained from formulating the Products with sugar.

128. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

129. **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

130. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that were supposedly free of added sugar, but instead purchased Products that are sweetened predominantly with allulose, a sugar. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

///

///

///

///

///

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**COUNT TWO**

**Violation of California False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500, et seq.**

***(Individually and On Behalf of the California Subclass)***

131. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

132. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

133. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, et seq., prohibits "unfair, deceptive, untrue or misleading advertising[.]"

134. **False & Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Challenged Representations disseminated to the public through the Products' labeling, marketing, and advertising, including on Defendant's website and on third-party retail websites such as Amazon.com. These representations were false because the Products do not conform to them: the Products contain four grams of sugar (allulose) per serving. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

135. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of section 17500.

136. **Intent to Sell.** Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

137. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price premium they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

138. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for product attributes that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### Cal. Civ. Code §§ 1750, et seq.

***(Individually and On Behalf of the California Subclass)***

139. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

140. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

141. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

142. **Goods/Services.** The Products are each a "good," as defined by the CLRA in California Civil Code § 1761(a).

143. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code § 1761(c).

144. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code § 1761(d).

145. **Transactions.** The purchases of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

146. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations:

a. Section 1770(a)(5), by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have";

b. Section 1770(a)(7), by representing that the Products "[are] of a particular standard, quality, or grade . . . [when] [they are] of another"; and

c. Section 1770(a)(9), by advertising the Products "with [the] intent not to sell [them] as advertised."

147. **Knowledge.** Defendant's uniform and material representations regarding the Products were likely to deceive, and Defendant knew or should have known that its representations were untrue and misleading. Defendant was fully aware that each serving of the Products contains four grams of sugar in the form of allulose, as admitted on the Products' own labels.

148. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

149. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

150. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider them important in deciding whether to purchase the Products.

151. **Section 1782 Prelitigation Demand/Notice.** Pursuant to California Civil Code section 1782, on or about August 26, 2026 Plaintiff's counsel, acting on behalf of Plaintiff and all members of the Class, mailed a demand letter, via U.S. certified mail, return receipt requested, addressed to Defendant WK Kellogg Co at its headquarters and principal place of business in Battle Creek, Michigan, and to its registered agent for service of process. If more than 30 days have elapsed without adequate corrective relief, Plaintiff will amend her complaint to seek damages under the CLRA; otherwise Plaintiff seeks injunctive relief only.

152. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price premium they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, and disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

153. **Injunction.** Given that Defendant's conduct violated California Civil Code section 1770, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise requiring Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products with the Challenged Representations.

154. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for product attributes that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant. Accordingly, Plaintiff seeks an award of punitive damages against Defendant.

**COUNT FOUR**

**Breach of Express Warranty**

***(Individually and On Behalf of the Nationwide Class and California Subclass)***

155. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

156. **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' labeling, and through its marketing and advertising, as described herein, including that the Products contain "ZERO ADDED SUGAR," and/or "0g ADDED SUGAR." This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

157. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

158. Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the advertising and label claims. The Products are not free of added sugar; they are sweetened predominantly with allulose, a sugar, in the amount of four grams per serving.

159. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price premium they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

160. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for product attributes that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Plaintiff and consumers as Defendant was aware of the probable consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

161. As a result of Defendant's breach, Plaintiff and the Class have been damaged in an amount to be determined at trial.

**COUNT FIVE**

**Unjust Enrichment/Restitution**

***(Individually and On Behalf of the Nationwide Class and California Subclass)***

162. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

163. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

164. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

165. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

166. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

167. **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price premium they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's conduct to prevent ongoing and future harm that will result.

168. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for product attributes that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## PRAYER FOR RELIEF

169. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel, consistent with applicable law;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

DATED: August 27, 2026

**MALK & POGO LAW GROUP, LLP**

*/s/ Valter Malkhasyan*
Valter Malkhasyan, Esq.
Erik Pogosyan, Esq.

*Counsel for Plaintiff and the proposed class*